Tompkins, J.,
delivered the opinion of the Court.
Scott sued Whitehill and Finch in ejectment. The jury found specially that the lot in question was owned in fee by Thomas Brady at the time of his death, viz: on the 1st of October, 1821; that on the 13th of October, 1823, the Bank of Missouri obtained a judgment against the administrator of said Brady, in the St. Louis Circuit Court; that on the 2d of September, 1825, execution issued on that judgment, and on the 24th of the same month the lot in question was sold by the Sheriff, on said execution, to John O’Fallon, who received the Sheriff’s deed for it, and sold it to Scott, the plaintiff in this action. It was also found in the special verdict, that a judgment was rendered against the administrator of Brady, in the same Court, for the sum of $2768 53, on the 7th of October, 1824, in favor of one Hill; that on the 17th of December, 1824, execution was issued on such judgment, under which the Sheriff levied, and on the 31st of March, 1825, sold said lot to said Hill, who leased said lot to said defendants. Judgment in the Circuit Court for the defendants.
It is contended by the plaintiff that the elder judgment, under which he claims, is a lien on the lands of Brady, the intestate; and sixty-first section of the act to regulate proceedings at law is cited. This act provides that judgments rendered in the Circuit Court shall be a lien on the lands of the person against whom the same are rendered, situated in the county for which the Court is held, from the day of the rendition of such judgment. Here, it will be observed, the judgment is rendered against the administrator, and it is contended that the general policy of the statute law requires this judgment to be a lien; first, because the lands of an intestate may be sold on execution. Geyer’s Digest, 264, section 64. Second. Because the statute makes the Sheriff’s deed pass all the estate and interest which the debtor had at the time of rendering judgment. And lastly, because, at common law, the very bringing of a suit against an heir, would impose a lien on the lands, which could not be divested by execution in a suit commenced at a later date. To this it may be answered, that the Legislature has undertaken to say how far a judgment shall be a lien ; it shall be a lien on the lands of the person against whom it is obtained. So soon as a man dies intestate, his lands on the failr ure of personal assets, become liable to be sold by the administrator to pay the debts, according to a classification made by the law regulating the distribution of the, intestate’s properly; a law which, though frequently changed by successive Legislatures, has, in all its shapes, been such, that it could not be satisfied, where the estate is insolvent, if a judgment obtained against the administrator were a lien on the lands of the intestate. It is true the law says, in general terms, when the land is sold on execution, that the Sheriff's deed shall be effectual for passing to the pur,-. *550 chaser all the estate and interest which the debtor had or might lawfully part with in the lands, at the time the judgment was obtained. But this must be understood to mean, provided the land had not been aliened between the time of obtaining the judgment and that ol the sale on execution; for if the judgment were obtained in St. Louis Circuit Court, and the land lay in New Madrid county, the judgment evidently is no lien ; or if the administrator sell the land before the Sheriff take it in execution, it evidently cannot be passed to the purchaser by the Sheriff’s deed. In short, the statute having said that the judgment shall be a lien on the lands of the person against whom it is rendered, and having made provision for the payment of the debts of an intestate by the administrator, we conceive that its policy forbids the Court to give constructive liens to judgments against the administrator on lands of their intestate. It was also contended, that the sale on Hill’s execution ought to have been made at the Court House door, on some day during the term of the Court of Common Pleas, where the land lies. See pp. 267-8, Geyer’s Digest, sections 66, 67, and 70. The law, authorizing the sale of lands at the door of the Circuit Court, Geyer’s Digest, p. 268, sec. 68, being repealed by an act passed 11th of January, 1822. The Court of Common Pleas then no longer existed ; but it was the duty of the Sheriff still to sell, and if he sold without fraud, the law is satisfied.
The judgment of the Circuit Court is affirmed.
Wash, J.
Of the remaining questions in this cause, the first, in the order they are stated, need not now to be decided. The second and sixth may be considered together, (i. e.) whether the Bank judgment, under which the plaintiff claims title, was a lien upon the real property of Brady’s estate, situate in the county of St. Louis, from the date of its rendition, and being prior in date, should be preferred to that under which the defendants claim? And whether prior sales under junior judgments will defeat the liens of elder judgments?
The law in force, when both judgments under consideration were rendered, provides, in express terms, “ that judgments obtained in the Supreme Court shall be a lien on the real estate of the person against whom the same are rendered, situated in any part of the judicial district for which the Court is held, and judgments rendered by Circuit Courts shall be a lien on the real estate of the person against whom they are rendered, situated in the county for which the Court is held; and all liens shall commence on the day of the rendition of the judgment, and shall continue for three years thereafter.” What is to be understood by the term lien, thus used and created ? By the old common law, lands were not subject to executions at the suit of a common person, and nothing is said as to the lien of the judgment. The 13i/i of Ed. I. ell. 18, was the first assault upon the feudal muniments of real property. By that, one half of the debtor’s lands were subject to be extended under the fieri facias, and delivered into the possession of thecreditor. Upon this statute is founded the writ of elegit. Not a word, however, is said about the lien of a judgment, and the operation of the fieri facias in binding goods and chattels, from its test only remained unaltered ; yet we find the Courts deciding immediately after the statute of Edward, and ever since, in order to give effect to their decisions, that a judgment was a lien upon the lands of the debtor from the day of its rendition, and that they *551 might be seized and sold, or extended, though they had been bona fide aliened by the debtor before execution awarded; and by force of mere construction, the lien was made to reach back to the first day of the term at which judgment was rendered upon the legal fiction, that the whole term is but a day. Why this great difference, from the very beginning, in the binding effect of a judgment upon lands and tenements, and upon goods and chattels ? At any time before the fieri facias, the debtor had full power, notwithstanding the entry of judgment, to sell, mortgage, or otherwise dispose of the latter; whilst the former, though aliened, bona fide, even before the judgment, but after the commencement of the term, were subjected to the lien of the after judgment. The object Courts sought to attain was, to render their judgments effectual, and that would have been promoted, doubtless, by extending the constructive lien to goods and chattels, as well as lands and tenements. But there were other rights than those of creditors to be considered. The daily transactions in society, between neighbor and neighbor, in selling and exchanging to and with one another, the produce of their stock, land, and labor, as well as the nature of personal property, made it proper for the Courts to look to the possession rather than the means by which it was acquired, and to protect the title of purchasers rather than the rights and interests of creditors: Hence the difference in the constructive lien with reference to real and personal property. Looking thus to the origin and object of the lien on real estate, it seems to follow as a direct and necessary conclusion, that it must be exclusive in its effect and operation. The object in liening, or binding the property with the judgment was, to secure to the creditor a satisfaction of his debt; and to permit him to be deprived of that security by the act of the defendant, or of any third person, would at once defeat the end for which the lien was created. The right to be satisfied, is ascertained and settled by the judgment. The first judgment gives the first right; which is entitled to a preference so long as the judgment lives, unless it be lost by the wilful or fraudulent act of the defendant, or such negligence as is deemed equivalent to fraud, and inconsistent with public justice. Such was the operation of the constructive lien, under the statute 13th Ed. I., ch. 18, which introduced the writ of ¿legit. Our statutes provide, in express terms, what the Courts have uniformly decided to be the spirit and import of that statute. The writ of elegit did not create the lien, but was framed and intended to give effect to the judgment under which it arose. The fieri facias, as it was introduced into the colonies by the sta. 5 Geo. II., ch. 7, sec. 4, and has been since understood and used in the several States, is in place of the writ of elegit, and neither i( public convenience, nor the prevention of fraud and vexatious delays,” (as contended by Lord Ellenborough, in 4 East. 528,) nor a regard for the rights of others, (as asserted by the Court in Peakes report of the case 'of Porter’s lessee v. Cocke,) can require, that it should have any greater or less force in passing the title to the fee, than the elegit had in passing the right of possession ; or that it should not, like the elegit, overreach intermediate sales made by the Sheriff' under younger liens or judgments, as well as those made by the defendant himself; for it is conceded, that the defendant himself has no power to sell or mortgage lands after judgment, so as to discharge them of the lien of such judgment. The doctrine contended for by the defendant’s counsel involves (as it seems to me) these absurdities: first, that the Sheriff is held competent to pass abetter title than the defendant himself could possibly convey, although the language of the law is, that the Sheriff’s deed, executed in the manner prescribed, Gey. Dig. 267, “ shall be effectual for passing to the pur *552 chaser all the estate and interest which the debtor had, or might lawfully part with, in the lands at the time judgment was obtained; and that of the deed itself, that he doth grant, bargain, and sell all the right, title, claim, and interest of the debtor, &c.; and secondly, that where a mortgage comes between two judgments, it shall be postponed to the lien of the prior judgment, being the act of the debtor himself, and preferred to that of the after judgment, whilst it is yet contended, that a sale under the latter will defeat the lien of the first judgment. To vary the position, that the .young judgment is weaker than the mortgage, which is weaker than the old judgment, and yet that the purchaser under the young judgment, whilst he would he subject to the mortgage, would nevertheless hold the premises discharged of the lien -of the first judgment. So complete a solecism in logic can never be law. Under this view of the subject, it becomes unnecessary to decide the third question raised, since the view I have taken of this cause, that point would not he varied, if it were clear that the sale, under the judgment of Hill and Keese, was to he controlled by the provisions of the act relating to judgments and decrees, passed on the 16th of February, 1825, which provides, that the sale of lands under a junior judgment, shall pass the title of the defendant, subject to the lien of all prior judgments then in force, &c.
It still remains tobe considered, whether the Bank judgment was a prior lien then in force? Or whether a judgment against an administrator creates a lien upon the real estate of the intestate ?
The first law, subjecting real estate to sale on execution, Gey. Dig. 266, provides, that all lands, tenements, and hereditaments whatsoever, within this territory, where no sufficient personal estate can he found, shall be liable to be seized and sold upon judgment and execution; and by the same act it is provided, (ib. 269,) that the Sheriff’s sale and deed, executed in the manner prescribed, “ shall be effectual for passing to the purchaser all the estate and interest which the debtor had, or might lawfully part with, in the lands, at the time judgment was obtained.” By this act, too, judgments were made liens upon the real estate of the persons against whom the same were rendered, situated in any part of the judicial district for which the Court is held,” for five years, &c. By the act of January 21th, 1822, sec. 61, the term for which thejudgment is to bo a lien, is reduced from five to three years. By an act, passed in 1817, it is provided, Gey. Dig. 267, that all lands, tenements, and hereditaments, shall be liable to be seized and sold, upon judgment and execution obtained against the defendant, or defendants, in full life, or against his or her heirs, executors or administaaiors, after the decease of the testator or intestate, provided no such lands, tenements, or hereditaments, shall be seized or sold until after the expiration of eighteen months, from the death of such ancestor, or the date of the letters testamentary, or of administration, and execution' may issue against such lands, tenements, or hereditaments, after the death of such ancestor, testator, or intestate, as if such person were living.. These provisions were all in force at the rendition of the judgments under consideration, and have undergone no material alteration by the various enactments in the late revised code. They are in pari materia, and to arrive at a correct construction, must be taken and considered together. From a connected view of them, it is clear that it was the intention of the Legislature to subject lands to sale, on judgment and execution, in all cases ; that although judgments against administrators as such, are not, strictly speaking, rendered against their persons, they are intended to have the same force and effect, and to give the sanie lien upon ths *553 property of the intestate that ordinary judgments against persons in full life would have or give; — and that the terms, “ defendant,'” “ debtor,” “ heir,” “ executor,” and “ administrator,” are used indifferently to express the person against whom judgment is rendered. Executors and administrators are distinctly within the equity of the statute. The lien is an incident to all judgments; it is given, and may he taken away, or suspended, by the law; and where heirs, executors, or administrators are parties, its operation has been suspended for eighteen months, within which period it may be entirely lost or defeated by the due administration of the estate, and the alienation of the land, in the manner provided in the law.
In the case of Scott v. Schatell and Rankin, decided at the last term of the Supreme Court of the -United States, upon a writ of error from the judgment of the District Court for the Missouri district, a construction has been given to our statute, making the judgment a lien, in which the Supreme Court put statutory liens upon the same footing with mortgages. This has settled the general law of lien in the manner for which I contend.